Oyez, oyez, oyez. The Honorable Appellate Court, Fifth District, State of Illinois is now in session. The Honorable Justice Cates presiding along with Justice Moore and Justice Vaughn. The first case this morning is 522-0812, Eska et al. v. Jack Schmitt Ford, Inc. et al. Arguing for the appellant is David Dury. Arguing for the appellee is Stephen Rehfeld. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, gentlemen. Are you ready to proceed? Yes, Your Honor. Morning. Morning. Mr. Dury, for the appellant, would you like to proceed? Yes, Your Honor. This appeal raises two primary issues. The first one would be when it's undisputed that an assignment of a contract with an arbitration clause occurred, who decides that undisputed fact of an assignment? The courts or an arbitrator. And a related issue would be when there is an assignment of all rights in the contract, may the S&R still enforce the arbitration clause in the assigned contract? And who decides that issue of law? The courts or the arbitrators on a case-by-case basis. On the first issue, as to— Mr. Dury, let me start with the second issue. There's no signature on the contract. Are you saying that the contract was assigned or was not assigned? It was assigned. And while there's no signature on the form, the copy of the contract that was given to my clients at the time they made the purchase, John Eska filed an affidavit. And while there was a motion to strike parts of his affidavit, there was no disputing the parts of his affidavit, paragraphs four and five, which said that there was an assignment and that the Eskas made all of the payments to Ford Motor Credit Company over a period of several years, after which Ford Motor Credit Company gave him a full release under the contract. And Jack in fact, in its brief, it does not claim that there was no assignment. I think it's pretty careful in that respect. That's not a disputed fact. It does argue that nobody signed that retail installment loan contract under the assignment language, but it does not dispute the fact that there was an assignment. And they did not oppose John Eska's affidavit in which he made all of the payments to Ford Motor Credit Company and they gave us a full release, all of which, by the way, happened. They'd made all the payments and given a full release by Ford Motor Credit Company some three or four years before the bad oil change that's in dispute here. So yes, I submit that it's undisputed that there was an assignment. And I'll wait to hear from Mr. Relfeld whether he's claiming that that's disputed and that there was really no assignment and the contract really is between the Eskas and Jack Schmidt Ford, which I suppose means that they didn't make any payments. The motion to strike the affidavit of John Eska dealt with some other paragraphs, but did not move to strike paragraphs four and five of his affidavit. So I would submit that it's kind of a moot issue as to who is to decide whether an assignment took place or not when it is not actually disputed that the assignment did take place. And if you look at the form in the installment retail vehicle installment loan contract, which is on page 22 of the supporting records, in bold print it says assignment. Then it says by signing below the seller assigns this contract to, it's already typed in, Ford Motor Credit Company. And then it gives the telephone number of Ford Motor Credit Company. And then it has the type written words Jack Schmidt Ford Inc. by, and then there's an X, but there's no signature by the X. Right. So if you exclude the undisputed affidavit of the Eskas that they made all the payments to Ford Motor Credit Company, you might say, well, maybe there's a disputed fact. But when you consider the affidavit of John Eska that they made all the payments to Ford Motor Credit Company and Ford Motor Credit Company then gave them a full release at the end of that payment period, I would submit it's undisputed that an assignment took place. Okay. Thank you. The second issue really is, so when there is an assignment, when it's undisputed that there is an assignment, may the S&R still enforce the arbitration clause in the assigned contract. And we've cited a number of cases to the court, including a case that was cited by this court in the Schneider versus Jack Schmidt Ford case, Sanders versus Savannah Highway Automotive, which is a South Carolina case. And in addition, there's an Alabama Supreme Court case, which we've cited in our brief at page nine, Ken Nehmer versus Ford Motor Credit Company, which involved essentially an identical or almost identical situation in which there was one of these retail installment loan contracts that was assigned by the dealer to Ford Motor Credit Company. And the issue was who can enforce the arbitration clause once there was an assignment is it the dealer or is it Ford Motor Credit Company? And the Alabama Supreme Court ruled that once there's an assignment, then all of the rights are assigned, including the right to compel arbitration. And the party that could enforce the arbitration clause was Ford Motor Credit Company, not the dealer. In the previous case of Schneider versus Jack Schmidt Ford, which was decided just about a year ago or so by this court, the court cited Henry Shine versus Archer and White Sales, which is a US Supreme Court case from 2019, which is mentioned at page seven of our opening brief. But that case dealt with the scope of a valid and enforceable arbitration contract. In this case, we're really concerned with whether a valid contract to and traditionally, and we've cited a number of cases, Illinois cases to the court, the issue of whether there's a valid contract to arbitrate is a question for the courts. Otherwise, the arbitrators could just bootstrap their authority by determining the existence of the contract that establishes their authority. And in this case, we're concerned with whether a valid contract exists after it's been assigned to another party in terms of the rights of the S&R. And I would submit that the courts, not the arbitrator, determine the existence of a valid contract, including whether any rights exist after there has been an assignment of that contract. Oh, if there's Mr. Drury, there was a work order that was created in association with this oil filter change. What impact, if any, do you think this work order has in relationship to the retail installment contract? I mean, the work order says there's a disclaimer as to damages. It doesn't talk about arbitration at all. Is this a separate contract? Well, that gets to the, I would submit the scope of the arbitration clause in the retail sales contract because there is no arbitration clause in the contract to provide the oil change some seven years later. And the argument that was advanced at the trial court level is that the arbitration language in the retail installment loan contract provides that it applies to that contract and any related transaction or I don't, I'm trying to remember the exact language related party. And the issue would be, well, is that language sufficient to say that seven years later when you get a bad oil change under a contract that doesn't have an arbitration clause, that the language in that retail installment contract, which has been completely enforced and executed, does that apply as far as the scope of that arbitration clause? Does that apply to that later dispute? And we submitted to the court that that is not within the scope of the arbitration clause. It's too remote. And the court decided that that scope of the arbitration clause issue would be decided by the arbitrator, not by the court. So that's a separate issue. But we don't even get to the issue of the scope of the arbitration clause in the retail sales contract. If the court determines that there was an assignment, it's undisputed there was an assignment. And once there was an assignment that Jack Schmidt Ford no longer had a right to enforce the arbitration clause. And I refer the court back to the retail installment contract, the assignment language, which is at page 22 of the supporting record. And that says, quote, by signing below, the seller assigns this contract to Ford Motor Credit Company. And it says that person, meaning Ford Motor Credit Company, will then have all the seller's rights, privileges, and remedies. So the language of the assignment clause provides that all rights and remedies will be transferred to the S&A once there is an assignment. So I would submit to the court there's two types of issues here. One issue is, is there an existing valid contract with an arbitration clause that can be enforced by Jack Schmidt Ford after the assignment? And secondly, if that is determined that Jack Schmidt Ford can enforce the arbitration clause even after it assigns all of its rights in the retail installment loan contract, does that arbitration clause have within its scope this later defective oil change that the arbitrator or the courts? Mr. Durie, you have a second count, a small claim, which is excluded from the arbitration provision. Oh, in the complaint? In your complaint, count two is for $6,000, which would satisfy the small claim statutory provision of less than $15,000. And small claims are excluded from the arbitration provision. Why would the court say that? Or why would you not sever that? Do you think this court can do that? I believe the court, this court would have the authority to do that if it chose to. But frankly, Your Honor, that issue was not addressed with the trial court either by the plaintiffs that I represent. We did not raise that issue with the trial court. And I did not even think of it, to tell you the truth. All right. Thank you. I have nothing further unless there are some additional questions. Justice Moore? No questions. Justice Vaughn? Yes, Counsel, you said that the courts determine the existence of a contract, but don't the cases actually say that the court, that that's for the arbitrator to decide unless the court finds fraud, duress, or unconscionability? Those are the only issues that the court would decide whether or not there was the lack of a valid contract. Isn't that right? Or am I Your Honor, I believe as a starting point looking at the Federal Arbitration Act and the Illinois Arbitration Act, that first there has to be an existing valid contract with an arbitration clause and the courts decide that. I would submit not the arbitrator who would then be bootstrapping the existence of their authority by determining that a contract exists which authorizes them to decide the issue. At least that's always been my belief. The existence of an arbitration clause is a valid arbitration agreement or a contract with a valid arbitration clause is for the courts to decide. In the Henry Schein case, for example, there was no issue as to whether there was a valid contract with an arbitration clause. But the issue was whether or not the dispute was within the scope of the arbitration clause. And that court held that even if it seems unreasonable to decide that the dispute is within the arbitration clause, that's for the arbitrator to decide as far as scope is concerned. But that case did not deal with the existence of the contract to containing the arbitration clause which was already an established fact in that case. So, at least that's the way I've read all of the cases that I understand that a court can determine that a contract is invalid for that the courts or the arbitrator to decide whether a valid contract exists to begin with. So, the courts certainly have the right to determine that a contract is unconscionable and therefore invalid and unenforceable. But I believe that the courts, not the arbitrators, decide the starting point is whether there is a valid existing contract to begin with. Thank you. Mr. Durie, in Snyder, wasn't it already determined as to this particular contract that the issue of arbitrability had been delegated to the arbitrator? Yes, there was a delegation clause in the Snyder case. How is this contract different? This contract has a delegation clause as well, but that doesn't address the fact that if there is a valid, in that case, it was not determined that a valid assignment occurred. The court used the language that if there was an assignment, then the Snyders might have an issue. But it didn't reach the issue of whether, once there is a valid assignment, whether the arbitrator or the courts to decide whether the S&R can enforce the arbitration clause. And I might add in the Snyder case, we're currently before an arbitrator in which the same issue is being addressed, that there was an assignment, and that's currently being decided by the arbitrator. So, in that case, the case is different. And I would submit that in the case we have here, it's undisputed that there was an assignment. Okay, we'll find out. Justice Moore, anything else? No questions. Justice Vaughn? Nothing further. Okay. Thank you, Mr. Durey. Mr. Rafel? Thank you, Your Honor. May it please the court. Let me start off by talking about this assignment issue. The assignment issue is actually, whether the contract was assigned or not assigned, is actually irrelevant to this court's determination of this appeal. Because as this court itself pointed out in the Snyder opinion, the issue of arbitrability is a gateway threshold issue, which pursuant to the arbitration clause in Snyder, was assigned for determination to the arbitrator. One thing that concerns me in this case is this car was paid for, they're no longer making payments. This is an old contract. It was a seven years old, something like that. And then while this is all done and over with, and they get maintenance done someplace else for a while, they come back for an oil change here at Schmidt. And when there's a problem, Schmidt throws out this old contract and says, we have to arbitrate. We have this contract. When does that contract end? If they keep this car for 20 years, are they still long before they're still under the terms of this contract? That argument that the plaintiffs raised about the remoteness in time between the time of the oil change at issue and the time of the contract was signed, is one that can still be raised by the plaintiffs. It's not whether the issue can be raised, it's the forum where that issue can be raised. And this contract delegates to the arbitrator the power to determine that issue. So could the plaintiff argue in arbitration that this claim is so remote in time from the contract that it's no longer within the scope of the arbitration clause? Yes. Yes, that argument can be raised in arbitration. So can the argument about the assignment that plaintiff's counsel was just referring to. That's the way I view it. That's not the issue. Mr. Rehfeld, you've got to have standing before you can even enforce something. And so whether or not there is an assignment seems to be a threshold issue, not as to arbitrarility, but as to standing. Who has the right to enforce the delegation clause in the arbitration clause? Well, I guess I would start a response to that by quoting from this court's opinion in Snyder, where this arbitration issue, not arbitration, but assignment issue was raised in this court. Before you do that, we recognize Snyder is a but in Snyder, both Jack Schmidt Ford and the Ford Motor Credit Company were defendants in that case. Here, we don't have that. We only have Jack Schmidt Ford and we have the claimed assignment, which clearly these people made payments to the finance, the credit company. So without the credit company in here, there's a huge distinction, at least in my mind, between the two cases. Well, I'd point out that the plaintiffs in the Snyder also made payments to the credit card company. Yeah, but both parties were there to enforce the arbitration clause. Here, you don't have to enforce both parties. You have Jack Schmidt Ford, who allegedly made an assignment to the credit company, the finance company, payments were made. And it seems to me that you have to decide from a threshold issue, whether there is even the ability of someone to enforce the was a work order done. And it was between clearly Jack Schmidt Ford and Sandra Eska. Yes. So how does Jack Schmidt Ford on a work order, which contains a lot of language in it about liability, storage charge, payment terms, a whole separate contract, how does that all of a sudden get swooped into something that the finance company had control over? It doesn't, because the language of the arbitration clause says it doesn't. If it doesn't, then Mr. Durie wins this appeal. There must be some way for Jack Schmidt Ford to enforce this arbitration clause. And that's what I'm asking is how do they get to do it if there was an assignment made? The arbitration clause allows parties other than the signatories to the contract to enforce it. The language of the arbitration clause itself says that it relates to claims between the parties to the contract or claims related to the contract or claims related to any relationship arising out of the contract, specifically including claims or disputes between the purchasers of the vehicle and the dealer. And in the trial court, our request for arbitration was based on the argument that the repair relationship that had resulted after the car had been purchased between the plaintiffs and Jack Schmidt Ford was a relationship that had arisen as a result of the retail installment contract and that Jack Schmidt Ford was a third party beneficiary of that contract specifically named in it because it was the dealer referenced in the arbitration clause. Now when you bring up third party beneficiary law, where in the finance agreement or the purchase agreement is Jack Schmidt Ford specifically named? It's named as the dealer. Jack Schmidt Ford is the dealer and the arbitration clause covers specifically disputes between the purchasers and the dealer. Okay. I would like to go back a minute to this assignment issue and refer to how this court handled the assignment issue back in the Snyder appeal because the same issue was raised there. And your honor is correct that Ford Motor Credit was also a party in that previous appeal and it's not here. But this court in Snyder didn't rule on the assignment issue at all. And the reason it didn't is because it said in that opinion, and I'm quoting here, we need not inquire as to whether Schmidt assigned its rights as this issue was one of arbitrability delegated to the arbitrator pursuant to the agreement. So as you know from the appellee's brief we filed, we're referencing in there the Snyder opinion. I know it's a rule 23 order, but it can be referred to for persuasive effect. And we relied on that case heavily. And we also replied heavily on the United States Supreme Court's opinion in the Henry Schein case. The Schein case, I think, is dispositive here. In the arbitration in Schein, the United States Supreme Court was interpreting the provisions of the Federal Arbitration Act. And there is a language in our contract here that specifically references the Federal Arbitration Act and says that the arbitration clause here is governed by that act. So the Schein case is binding precedent, in my view, anyway, for the court's determination of this case. And what the court in Schein said was that the parties to an arbitration contract can agree within the terms of the contract to assign so-called threshold issues to an arbitrator and allow an arbitrator to make the determination on those issues rather than the court. And I would like to quote one section of Henry Schein. And let me quote this language from the Schein case that says, quote, where the party's contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true, even if the court thinks that the argument that arbitration agreement applies to a particular dispute is wholly groundless, unquote. So that, I think, is the language that can resolve this appeal. Mr. Duray, what about Justice Cates' question to Mr. Duray about the small claims? Their count two is the small claims under the arbitration language on that installment contract under the rights you and we do not give up. Paragraph four says the right to request or maybe five, seek remedies in small claims court. Why can't this just be severed out and they go to small claims court up to 15,000? I have to admit, I'm not prepared to address that issue because it wasn't raised by me or anybody in the trial court or by plaintiffs. So this is the first I actually have heard of it this morning. I don't really know how the provisions of the small claim law apparently prohibiting arbitration of small claims meshes with the provisions of the Federal Arbitration Act, which allow parties to arbitrate. I don't know. If the court would like us to brief that issue, we could do it. But I'm not prepared to discuss it this morning because, frankly, this was the first I had taken that into consideration. I had never looked at this case as a small claims case before because of the significant amount of damages being requested by the plaintiff in the other account of the complaint. There isn't any doubt that the arbitration clause we have here assigns to the arbitrator the power to determine threshold issues. The language from the arbitration clause we have here, which, by the way, is exactly, exactly the same clause we had in Snyder, says that, quote, claims regarding the interpretation scope or validity of this provision or arbitrability of any issue are for the determination of the arbitrator, not the court. Every claim that we have in this case is a threshold issue. At this point, the plaintiff's claim about assignment invalidating the contract, that's a threshold issue. Our claim that the relationship that developed between the plaintiff and the injection for this ongoing repair relationship after the purchase, our argument that that falls within the scope of the arbitration clause, that's a threshold issue. The plaintiff's claim that there's too much time elapsed between the time of the initial retail installment contract and the time of the oil change at issue here, that there was too many years had elapsed so that three mountains in time makes the claim fall outside the scope of the arbitration clause, that's a threshold issue. All of these are threshold issues, and there's not the slightest doubt that the language in this arbitration clause assigns the determination of all threshold issues to an arbitrator, and under Schein, the court was prohibited from ruling on any of them. And the court recognized that and refrained from doing so. That doesn't mean the issues are gone. The plaintiff has all the claims now that they had when this case started. And likewise, Jack Schmidt Ford has all the claims in support of arbitration that it had when this case started. So it's not that the trial court's ruling here took away anybody's arguments, it just changed the forum for the determination of those arguments. And there isn't any doubt that the contract says there's an arbitrator who's supposed to be a trial court. And I view it. So because of that clear language in the arbitration agreement, because the arbitration agreement here is exactly the same one we had in Schneider, and because of the Schein case, I would request this court to affirm the order of the trial court in this case. And that's about all I have to say, I think. Justice Moore? No questions. Justice Vaughn? No questions. Thank you. Thank you, Mr. Reichelt. Mr. Dury, you'll have five minutes for rebuttal. Thank you, Your Honor. I would like to address just a couple of points. First, the argument that, at least as I understood the argument, that even if there was an assignment of all rights in the sale of an installment contract to Ford Motor Credit Company, that Jack Schmidt Ford would still be a third-party beneficiary of that contract. And I would just refer the court to the assignment language on page 22 of the supporting record, which says that person, referring to the S&E, will then have all seller's rights, privileges, and remedies. And that would include any rights as a third-party beneficiary. Once there is an assignment of all rights in the contract, the S&R can no longer come back and say, even though I assigned all my rights in the contract, I'm still qualified as a third-party beneficiary of that contract. I would submit that is not the case. With respect to the Henry Schein case, that case dealt with the scope of the arbitration clause issues. And the issue was, even if it appears to be, and this is not the exact words I used, but it's something similar, highly unlikely that the arbitrator will decide that this particular claim falls within the scope of the arbitration clause. Nevertheless, the arbitrator is to decide that scope issue. That's different from deciding whether there is a valid contract to begin with or whether an original contract has been assigned to a third party. And I would point out, and I think it's probably more than that now, but about a year ago, it was pointed out that at least 34 cases have distinguished or not followed Henry Schein because of that sort of extreme nature that, for example, you could say in this case, well, it's not conceded that there was a valid assignment, even though it's also not disputed. Therefore, we'll have the arbitrator to decide that not disputed fact. It's kind of to that extreme. So, I would submit in this case, it's undisputed that there was an assignment which assigned all of the rights to enforce the arbitration clause to Ford Motor Credit Company. And it's not even necessary to get to the issue of whether or not this remote oil change seven years later is within the scope of the arbitration clause because it is a, quote, related transaction. I have nothing further, if there's any additional questions. Justice Moore? No questions. Justice Vaughn? No questions. All right. Thank you both for your arguments here today. This matter will be taken under advisement and we will issue an order in due course.